UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Leila J. Thompson

    v.                                    Case No. 22-cv-350-SM-AJ
                                            Opinion No. 2024 DNH 037
Citigroup Mortgage Loan
Trust 2019 D


O R D E R

Pro se plaintiff, Leila J. Thompson, brought suit in state court against Citigroup Mortgage Loan Trust 2019 D ("Citigroup"), seeking an injunction to stop the scheduled foreclosure sale of her home, along with other relief. Citigroup removed the case to this court. Thompson filed an amended complaint, which the court interpreted to allege claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., and its implementing regulation, Regulation X, 12 C.F.R. §§ 1024.1, et seq.[1]

Thompson and Citigroup have filed cross motions for summary judgment. For the reasons that follow, the court grants summary judgment in favor of Citigroup and denies Thompson's motion.

---

[1] Although the court suggested in the order denying Citigroup's motion to dismiss that the allegations might support a claim for breach of the covenant of good faith and fair dealing, Thompson did not pursue that claim. See doc. no. 12, at 5.

Standard of Review

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Gattineri v. Wynn MA, LLC, 93 F.4th 505, 509 (1st Cir. 2024) (quoting Fed. R. Civ. P. 56(a)). A genuine factual dispute exists if "the evidence is such that a reasonable jury could resolve the point in the favor of the non-moving party," and a material fact is one "that has the potential of affecting the outcome of the case." Hamdallah v. CPC Carolina PR, LLC, 91 F.4th 1, 16 (1st Cir. 2024) (internal quotation marks omitted). To decide a summary judgment motion, the court draws all reasonable inferences in favor of the nonmoving party from the properly supported facts in the record. Lech v. von Goeler, 92 F.4th 56, 64 (1st Cir. 2024).

The court reviews cross motions for summary judgment under the same standard but separately, drawing reasonable inferences in favor of the non-moving party in turn. Jespersen v. Colony Ins. Co., 96 F.4th 481, 487 (1st Cir. Mar. 25, 2024). When a plaintiff moves for summary judgment on her own claims, to succeed, she must provide conclusive evidence that shows "no reasonable fact-finder could find other than in [her] favor." Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009); see also In re Buscone, 61 F.4th 10, 27-28 (1st Cir. 2023);

Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad
Obligatorio v. Juarbe-Jimenez, 656 F.3d 42, 50 n. 10 (1st Cir.
2011); Brookline Opportunities, LLC v. Town of Brookline, 682 F.
Supp. 3d 168, 178 (D.N.H. 2023).  Under the local rules in this
district, a memorandum in support of a motion for summary
judgment must include a statement of material facts each of
which is supported by appropriate record citations, and a
memorandum in opposition must also include a statement of
properly supported material facts.  LR 56.1.  "All properly
supported material facts set forth in the moving party's factual
statement may be deemed admitted unless properly opposed by the
adverse party."  LR 56.1(b).

In this case, Thompson provided only a minimal statement of
facts in support of her motion for summary judgment.  Although
Thompson filed 160 pages of exhibits with her motion, she cites
few of the documents provided.[2]  Thompson did not file a response

---

[2] Thompson's attachment includes a copy of her mortgage
statement dated October 10, 2023; 15 pages of "Official
interpretation" of RESPA's implementing regulation, 12 C.F.R.
1024.41, from the Consumer Financial Protection Bureau; copies
of Fay's history of Thompson's account with certain items
highlighted; a copy of Thompson's notes made on Citigroup's
interrogatories with copies of mailing receipts; a copy of her
request to Citigroup for production of documents; a copy of
"Notes and Memos" from Fay that is largely redacted; copies of
correspondence between Thompson and representatives from
consumer organizations; copies of Borrower Assistance Forms; a
notice that the IRS accepted Thompson's tax return; and a
response to Thompson from the Social Security Administration.

to Citigroup's motion for summary judgment, which means that the court takes Citigroup's properly supported facts as true, for purposes of its motion for summary judgment.

## Background[3]

Sometime before 2020, Leila Thompson obtained a loan secured by a mortgage on her property at 61 Middle Road, Deerfield, New Hampshire.[4]  Citigroup holds the mortgage, which is serviced by Fay Servicing.  Thompson represents that her loan was modified by the prior lender and that the modification lowered her interest rate to 2%.  Thompson acknowledges that she is behind on her mortgage payments but she contends that her low interest rate is the reason that Citigroup is pursuing foreclosure rather than loan modification or other relief.

---

[3] In preparing the background for this order, the court considered the supported facts provided by both parties, along with the documents filed in the case.

[4] Citigroup represented in its motion to dismiss that it holds a mortgage granted by Thompson that is dated December 9, 2006.  Doc. no. 4-1, at 2 (citing Rockingham County Registry of Deeds, Book 4747, Page 0653).  It appears that the mortgage originally was held by another lender.  Thompson does not dispute that Citigroup currently holds the mortgage on her property or that Fay services the mortgage.

A. Factual Background

On April 1, 2020, during the COVID-19 pandemic, Thompson contacted Fay, seeking mortgage assistance.  Thompson represents in her amended complaint that Jorge Flores was her account manager at Fay.[5]  She alleges that despite her efforts, Flores did not communicate with her.  Doc. no. 9, at 2.  The summary judgment record, however, shows communication between Thompson and Fay about assistance with her mortgage beginning in April of 2020 and continuing into 2023.

After Thompson contacted Fay on April 1, Fay sent a letter to Thompson on April 9, 2020, with information about loss mitigation options and the information it would need from Thompson to support an application for loss mitigation.  Fay approved Thompson for a temporary forbearance plan on April 30, 2020, that deferred her mortgage payment for 30 days.  In the notification letter, Fay informed Thompson that the forbearance plan expired on July 7, 2020.  Thompson requested more assistance, and Fay responded in a letter dated June 12, 2020, approving Thompson for another forbearance plan, based on her incomplete loss mitigation application.[6]  Fay deferred Thompson's

---

[5] Thompson provided a copy of an email from Flores dated March 7, 2022, that notified her of activity on her application for loss mitigation and directed her to login to her account.

[6] Loan forbearance or deferment and loss mitigation are separate forms of relief.

mortgage payments again on June 30, 2020, and July 30, 2020, for a total of three months of deferrals.

In the June 12, 2020, letter, Fay stated that to complete the loss mitigation application Thompson would need to submit a completed and signed Borrower Assistance Form, and proof of current homeowner's insurance.  If she were seeking assistance due to COVID-19, she would also need to submit a hardship letter.  Fay's letter stated that it might not be able to evaluate the loss mitigation options until Thompson provided a complete application.

Thompson made a mortgage payment of $4,735.00 on August 10, 2020.  Fay's notes and memos in the "Life of Loan Memo" (document no. 29-5) show several attempts to contact Thompson in August and September of 2020.  Fay sent Thompson another letter on October 8, 2020, that listed options for Thompson if she were unable to make mortgage payments, provided links for help with options, and included the steps for Thompson to follow in pursuing options with Fay.

Thompson's mortgage loan was past due on December 1, 2020. Thompson represents that she contacted Fay then (Fay's records show a call from Thompson on December 5, 2020) to inquire about what assistance was available and to notify Fay that she had applied for a grant of $2,500.00.  She further represents that Fay responded that they would not offer additional deferments

and would only accept full payment.  Thompson made a mortgage payment of $3,629.58 on December 5, 2020, which was not the full amount past due.

Fay attempted to contact Thompson between December 2020 and June 2021, without success.  Thompson alleges that when she received the grant money, she sent it to Fay but that Fay did not apply it to the loan, because the loan was in foreclosure status.  Fay sent letters to Thompson on March 29 and April 1, 2021, to inform her of the option to apply for loss mitigation and provided instructions on the application process.

Thompson called Fay on June 30, 2021, seeking assistance because of the effects of the COVID-19 pandemic and made a verbal loss mitigation application.  Fay responded with a letter that explained Thompson had begun the application process with her call but the application would be incomplete unless Thompson filled out and signed a Borrower Assistance Form and provided proof of homeowners' insurance.  Thompson sent Fay the loss mitigation application that day.  Fay acknowledged receipt of the application by letter on July 2, 2021, and informed Thompson that the application was incomplete because it did not include a signed Borrower Assistance Form or a copy of her homeowner's insurance declaration page.  Fay set a deadline of July 12, 2021, for Thompson to complete the application.

When Fay did not get a response from Thompson, a
representative tried to contact her.  A Fay representative
talked to Thompson by telephone on August 3, 2021, and told her
that her application was still incomplete because she had not
provided a homeowner's insurance declaration page.[7]  Fay notified
Thompson again by telephone on September 2, 2021, that her
application was incomplete.  The notes from that conversation
state that Thompson's application was still incomplete because
she needed proof of homeowner's insurance and that Thompson
"will work on getting a denial letter in order to get a complete
LMP [loan modification plan]."  Doc. no. 27-1, 116.  Fay also
noted that Thompson's homeowner's insurance was "force placed."[8]
Doc. 27-1, at 116.  Thompson's incomplete application expired on
September 30, 2021.

Fay notified Thompson by letter on February 10, 2022, that
if she completed a loss mitigation application, Fay could
determine whether she qualified for assistance.  Thompson

---

[7] Although Fay does not clarify, it appears that Thompson
submitted a completed and signed Borrower Assistance Form
sometime before August 3, 2021, because that document was no
longer cited as missing from the application.

[8] Under RESPA, "'force-placed insurance' means hazard
insurance obtained by a servicer on behalf of the owner or
assignee of a mortgage loan that insures the property securing
such loan."  12 C.F.R. § 1024.37(a); see also In re Watkinson,
2022 WL 209606, at *3 (Bankr. D. Mass. Jan. 24, 2022).

submitted her second loss mitigation application on March 1, 2022, and Fay acknowledged the application the same day.  Fay also notified Thompson that the application again was incomplete because it lacked a completed and signed Borrower Assistance Form and the declaration page from her homeowner's insurance. Fay also notified Thompson that she had to submit a complete application by March 31, 2022, to be considered for loss mitigation options.  Thompson called Fay on May 25, 2022, and she was told again that her application was incomplete.  That application, the second loss mitigation application, expired on May 31, 2022.

Thompson submitted her third loss mitigation application on May 31, 2022.  The foreclosure sale of Thompson's property was then scheduled for July 8, 2022, which was less than 45 days from the date of her third application.  Fay did not send an acknowledgement of the third application.  The foreclosure sale was rescheduled to August 23, 2022.

Thompson sought assistance from Affordable Housing Education and Development ("AHEAD").  Matthew Manning from AHEAD sent a letter to Fay on June 15, 2022, explaining his efforts to contact Fay on Thompson's behalf and Fay's repeated failure to call him back. Thompson was approved for a $20,000 grant on June 21, 2022, by Tidal Basin, a company within Rising Phoenix Holdings Company.

Brittany McCloud from Tidal Basin contacted Fay on Thompson's behalf, and on June 30 a representative from Fay notified Tidal Basin that Fay could not accept the $20,000 by itself because Thompson would have to qualify for a loan modification or pay the entire amount owed. On July 18, 2022, Fay sent McCloud their assistance form for purposes of determining whether Thompson would qualify for assistance with the balance of loan if she received the $20,000 grant. On July 19, 2022, Thompson sent Tidal Basin documents and explained the difficulty she had experienced dealing with Fay.  Tidal Basin required confirmation from Fay that they would work with Thompson on the difference between the grant amount and the mortgage loan debt before they could provide the grant.  See doc. no. 27-1, at 41. In addition, on August 17, McCloud wrote to Manning that the issue with Thompson's application for loan modification with Fay was that she did not have homeowner's insurance and also noted that Tidal Basin investors would also require Thompson to have an insurance policy before reviewing her loan modification for purposes of the grant.

Manning called Fay on August 11, 2022, asking whether Fay received an authorization form he sent on June 6, 2022, and because Fay did not have the form, Manning sent the form by email.  Manning's emails to Thompson on August 15, 2022,

document the problems he experienced in attempting to
communicate with Fay on Thompson's behalf.

When Manning managed to get through to Fay on August 15, a
representative informed him that Thompson's application was
incomplete because it lacked proof of homeowner's insurance.  In
email correspondence with Thompson on August 15, Manning
explained that Fay would need proof of homeowner's insurance to
complete the application and that the fees accruing on her loan
were likely due to the cost of insurance that Fay had "forced
placed" on the property.

Thompson filed suit in Rockingham County Superior Court on
August 15, 2022, seeking to enjoin the scheduled foreclosure
sale of her property.  Samantha Marshall, also from AHEAD,
attempted to contact Fay on Thompson's behalf on August 17.  A
representative at Fay told Marshall that Thompson's mortgage
loan had been forwarded to Fay's legal team and would not give
Marshall any contact information.  As of September 22, 2022, the
amount due to reinstate Thompson's mortgage was $43,366.47.

On September 2, Susan Pinkney from the New Hampshire
Homeowner Assistance Fund ("NHHAF") (which may be a part of
Tidal Basin) notified Thompson that she had received Thompson's
application and determined that Thompson might be eligible for a
grant up to $20,000, but there were additional steps required.
Thompson continued to correspond with Tidal Basin and NHHAF. On

March 24, 2023, a case manager with NHHAF, Kimberly Mamani,
notified Thompson that her mortgage delinquency was $53,530.51,
which exceeded the program's cap of $40,000.  Thompson responded
that the amount over $40,000 was the result of fees added to the
loan by Fay, which she disputed.

Thompson filed a complaint with the Consumer Financial
Protection Bureau ("CFPB")on June 18, 2023, challenging
$5,000.00 in fees that had been added to her loan.  The CFPB
sent Thompson's complaint to "the company for a response"
(presumably Fay, although the company is not identified) on the
same day. Thompson's exhibit shows that the company responded to
the complaint on June 30, 2023, and that the CFPB closed
Thompson's case.

On August 7, 2023, Mamani, from NHHAF, sent an email to
Thompson and reported that Fay had provided Thompson's new loan
balance of $59,560.59, which exceeded their cap of $40,000.  On
September 19, 2023, Mamani sent another email to Thompson
explaining some changes to their program and stating that the
mortgage balance of $59,560.59 was only applicable through
August 31, 2023.  Mamani suggested that Thompson contact AHEAD
to see what options might be available.  Thompson answered that
she had "been back and forth with AHEAD and there [was] little
they [could] do for [her]."  Doc. no. 27-1, at 59.  Thompson
also noted that it had taken more than a month to receive a

12

response from Mamani and asked if Manami could communicate with her more quickly.

Based on the mortgage statement Thompson provided with her motion for summary judgment, the amount due on October 10, 2023, was $62,620.63.

B.  Procedural Background

In the complaint filed in state court on August 15, 2022, Thompson sought to enjoin the foreclosure sale of her property and asked the court to order Fay to provide a valid payment amount (without the fees Fay had added to the loan) and to accept a housing grant in the amount of $20,000 with additional payment to reinstate the mortgage.  The state court granted Thompson's request for ex parte relief to stop the foreclosure sale, with a hearing scheduled within 10 days.[9]

Citigroup removed the case to this court on September 7, 2022.  In this court, Citigroup moved to dismiss on the ground that Thompson's pro se complaint filed in state court did not meet the pleading standards of Federal Rule of Civil Procedure 8 and failed to state a claim on which relief could be granted.

_____

[9] Thompson stated in her amended complaint that a hearing was held on August 24, 2022, but Citigroup did not appear.  Doc. no. 9, at 7.  She further alleges that the hearing was rescheduled, Citigroup "requested a change of venue to Federal Court." Id.

Doc. no. 4.  Thompson moved to amend her complaint.  Doc. no. 7.
The court granted the motion to amend and denied the motion to
dismiss.  End. Or. Nov. 4, 2022.

Thompson filed an amended complaint on November 17, 2022.
Doc. no. 9. She alleges that she attempted to work with Fay to
apply for loss mitigation but her assigned representative would
not communicate with her.  She alleges that she applied for and
was approved for a $20,000 grant through New Hampshire Housing
and that she now has homeowner's insurance.  She further alleges
that if certain charges were removed from her loan, if she
received grant money and the money was applied against the loan,
and if the escrow balance was also applied, she could pay the
remaining amount owed on the mortgage loan.

Citigroup again moved to dismiss on the ground that
Thompson's amended complaint failed to comply with the pleading
requirements of Rule 8.  Doc. no. 10.  Interpreting the
complaint to seek relief under 12 C.F.R. §§ 1024.35, 1024.36,
1024.40, and 1024.41 (which are the regulations cited in the
amended complaint), Citigroup argued that the complaint lacked
sufficient factual allegations to support any claim.  The court
denied the motion to dismiss, concluding that Thompson's amended
complaint, "liberally construed, asserts claims under the Real
Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq., and
Regulation X, 12 C.F.R. § 1024.1 et seq."  Doc. no. 12, at 1.

14

## Discussion

Thompson moves for summary judgment in her favor, arguing that Citigroup, through Fay, did not process her loss mitigation applications as is required under RESPA and Regulation X, specifically 12 C.F.R. § 1024.41.[10]  Citigroup objects to Thompson's motion and moves for summary judgment in its favor on all of Thompson's claims.

## I.  Thompson's Motion for Summary Judgment

In her motion, Thompson states briefly that she filed three applications for loss mitigation and that she was entitled to loss mitigation and other assistance under Regulation X. Although Thompson quotes excerpts from the CFPB's "Official Interpretation" of parts of Regulation X, 12 C.F.R. §§ 1024.41(b) and (c), she provides no developed argument with an

---

[10] Although Thompson cites additional parts of Regulation X in her amended complaint, she does not include those provisions in her motion for summary judgment.  To the extent Thompson argues in support of summary judgment that Citigroup violated the CARES Act, which was not alleged in her amended complaint, that argument is understood to pertain to Thompson's RESPA claim under Regulation X that Citigroup violated the requirements of 12 C.F.R. § 1024.41(c)(2)(iii).  The court does not infer from Thompson's references to the CARES Act that she intended to pursue a new and unpleaded claim, which would require amendment.

analysis of the evidence to show that Fay violated the cited regulations.

To succeed on summary judgment in her favor on the cited claims, Thompson must provide conclusive evidence to show that she is entitled to the relief she seeks.  <u>Torres Vargas v. Santiago Cummings</u>, 149 F.3d 29, 36 (1st Cir. 1998).  Conclusive evidence establishes a fact in question to the extent that "no reasonable fact-finder could find other than in [the moving party's] favor."  <u>Scottsdale</u>, 561 F.3d at 77. For that reason, the burden on a party moving for summary judgment on her own claim is different and considerably heavier than the ordinary summary judgment standard.  <u>Photographic Illustrators Corp. v. Orgill, Inc.</u>, 953 F.3d 56, 64-65 (1st Cir. 2020).

Thompson did not provide developed argument with sufficient citations to conclusive evidence to support her motion for summary judgment.  For that reason, Thompson's motion is denied. Further, as the analysis of Citigroup's motion for summary judgment demonstrates, Thompson's claims fail on the merits, even when all reasonable inferences are resolved in her favor.

II.  <u>Citigroup's Motion for Summary Judgment</u>

Citigroup moves for summary judgment on Thompson's claims that it violated the requirements imposed by RESPA though Regulation X in 12 C.F.R. §§ 1024.41, 1024.40, 1024,36, and

1024.35. Thompson did not file a response to Citigroup's

motion. [11]

Based on the summary judgment standard, all reasonable factual

inferences are resolved in Thompson's favor for purposes of

Citigroup's motion.

---

[11] Pro se parties are entitled to certain accommodations
because of that status. See, e.g., Triantos v. Guaetta &
Benson, LLC, 91 F.4th 556, 562 (1st Cir. 2024) (stating that
courts should "endeavor, within reasonable limits, to guard
against the loss of pro se claims due to technical defects").
Pro se parties, nevertheless, are required to follow the Federal
Rules of Civil Procedure and the court's procedural rules. See
Eagle Eye Fishing Corp. v. U.S. Dept. of Commerce, 20 F.3d 503,
506 (1st Cir. 1994); Fed. R. Civ. P. 56(a) & (c); LR 56.1.
"When a non-moving party fails to file a timely opposition to an
adversary's motion for summary judgment, the court may consider
the summary judgment motion unopposed, and take as uncontested
all evidence presented with that motion." Pérez-Cordero v. Wal-
Mart Puerto Rico, 440 F.3d 531, 533-34 (1st Cir. 2006). For
that reason, "a party's failure to oppose summary judgment is
fatal to its case." Id. at 534.
    When Citigroup filed its own motion for summary judgment
with its objection to Thompson's motion, the court required
Citigroup to refile its motion and gave Thompson additional
time, 30 days from the date of refiling, to respond. The court
also sent Thompson notice regarding the summary judgment
procedures and provided a copy of Rule 56 and Local Rule 56.1.
Thompson, however, did not respond to Citigroup's motion or seek
additional time to do so.
    In the absence of any response, the court is limited to
Thompson's motion for summary judgment to support her claims,
which provides little useful guidance as to their substance and
the law and evidentiary record that might support them.
Thompson's failure to file a response to Citigroup's motion
leaves the court without any basis to consider what objections
she might raise. United States v. Flete-Garcia, 925 F.3d 17, 38
(1st Cir. 2019)("[C]ourts, like the Deity, are most frequently
moved to help those who help themselves." (internal quotations
omitted)).

A.   <u>Loss Mitigation Procedures - Section 1024.41</u>

Section 1024.41 provides that "[a] borrower may enforce the provisions of [that section] pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."  § 1024.41(a).  Section 2605(f) provides that an individual may recover actual damages caused by the defendant's failure to comply with the provisions and any additional damages the court might allow if the defendant has engaged in "a pattern or practice of noncompliance," not to exceed $2,000.  Thompson relies on provisions under § 1024.41(b) for receipt of loss mitigation applications and on § 1024.41(c) for evaluation of loss mitigation applications.

1.  <u>Review of a loss mitigation application upon receipt - § 1024.41(b)(2)</u>

Thompson alleges in her amended complaint that Case Manager Flores never communicated with her, including that he did not acknowledge receipt of her loss mitigation application, did not notify her that the application was not complete or tell her what was needed to complete the application, and did not give her a deadline to complete the application.  If a servicer receives a loss mitigation application more than 45 days before a scheduled foreclosure sale, the servicer must promptly review the application to determine whether it is complete and notify

the borrower in writing within five days after receiving the
application that it was received and that it is either complete
or incomplete. §§ 1024.41(b)(2)(i) & (2).  The servicer must
also give the borrower a reasonable deadline to complete the
application.  § 1024.41(b)(2)(iii).

The record shows that Fay communicated with Thompson
beginning in April of 2020 about loss mitigation options.  The
letters she received informed her that to be considered for loss
mitigation options she would need to submit a complete loss
mitigation application that consisted of a complete Borrower
Assistance Form, which was available from a Fay case manager or
through the Fay website with the link identified, along with
other information. Doc. nos. 31-1, 31-4, 31-5, 31-6, & 31-7.
Fay granted Thompson a forbearance plan at the end of April of
2020.  Thompson submitted her first loss mitigation application
on June 30, 2021, through a telephone conversation with her
account manager.  Fay informed her by letter the same day that
the application was incomplete because it lacked a completed and
signed Borrower Assistance Form and proof of homeowner's
insurance and sent a second notice that the application was
incomplete on July 2, 2021.  Doc. nos. 31-9 & 31-10.  Fay set a
deadline of July 12, 2021, for Thompson to complete the
application.

Fay sent Thompson another notice of loss mitigation options on February 10, 2022.  Thompson submitted her second application for loss mitigation on March 1, 2022.  Although Thompson alleges in her amended complaint that by May 23, 2022, she had not received any communication from Fay about her application, the record establishes that Fay responded to the application the same day, March 1, notifying Thompson that her application was incomplete and listing the documents required.  The March 1 notice set a deadline of March 31, 2022, for Thompson to complete the application.  Thompson did not complete that application.

She submitted her third application on May 30, 2022, when the foreclosure sale of her property was scheduled for July 8, 2022.  Because the third application was submitted less than 45 days before the scheduled foreclosure sale, the review and notice requirements of § 1024.41(b)(2) did not apply.  The record shows, however, that Fay communicated to Thompson that the third application was incomplete because it lacked proof of homeowner's insurance.  Further, Matthew Manning of AHEAD explained the need for insurance to Thompson on August 15, 2022.

Thompson asserts in her motion for summary judgment that she completed three loss mitigation applications and never received any notice that the applications were received or any decision on the applications.  The record, as summarized above,

however, demonstrates that she received notice of receipt within the required five days on her first and second applications. She also received notice that those applications were incomplete, notice of what documents were missing, and a deadline for completing the applications. Because the third application was filed within 45 days of the scheduled foreclosure sale, no notice was required.

Based on the summary judgment record, Thompson has not shown that a genuine factual dispute exists sufficient to avoid summary judgment on her claim that Citigroup, through Fay, violated Regulation X, as provided in § 1024.41(b)(2).

### 2.  Evaluation of applications - § 1024.41(c)(2)

Thompson asserts that Fay did not properly process or decide her applications and cites provisions of § 1024.41(c)(2) in support.[12]  Section 1024.41(c)(2) pertains to incomplete loss mitigation applications.  Subsection (i), subject to cited exceptions, bars a servicer from offering an option based on information included with an incomplete application in order to

---

[12] Thompson cites § 1024.41(c) in her motion for summary judgment but does not develop the grounds for the claim and does not appear to allege a claim under § 1024.41(c) in her amended complaint.  Citigroup, however, recognized that regulation as a basis for her claims.  Given Thompson's pro se status, the court also addresses a possible claim under § 1024.41(c).

avoid other options that might be available based on a complete
application.  Thompson does not make an argument or provide
evidence that suggest Fay violated § 1024.41(c)(2)(i).

Section 1024.41(c)(2)(ii) provides that if a servicer has
used reasonable diligence to obtain documents and information
required to complete an application but the application remains
incomplete for a significant period of time, "a servicer may, in
its discretion, evaluate an incomplete loss mitigation
application and offer a borrower a loss mitigation option."  The
record demonstrates that Thompson never completed her
applications for loss mitigation because she did not have and
did not provide proof of homeowner's insurance and, for the
first application, a completed Borrowers Assistance Form.  To
the extent that Thompson alleges that Fay did not use reasonable
diligence to obtain the missing documents, the record
demonstrates that Fay did provide the required information and
notifications.  Further, Thompson has not shown that Fay could
have remedied the lack of proof of homeowner's insurance with
reasonable diligence.[13]

---

[13] The problem here was not merely a lack of documentation.
The record indicates that Thompson did not have homeowner's
insurance.  For that reason, Fay "force placed" insurance on
Thompson's property to protect Citigroup's mortgage.

To the extent Thompson argues that Fay should have considered her incomplete application for loss mitigation options, that action by a servicer is discretionary rather than required by the regulation.  Thompson has not shown a factual dispute as to whether Fay abused its discretion in failing to offer options based on her incomplete application.

Section 1024.41(c)(2)(iii) pertains to short-term loss mitigation options and provides that a servicer may provide short-term loss mitigation options based on an incomplete application.  When such options are offered, the servicer is required to provide notice of the borrower's obligations, that other options might be available, and that the borrower has the option to provide a complete application.  Id.  When a borrower is complying with the terms of a forbearance or repayment plan under this provision, a servicer cannot begin the foreclosure process or conduct a foreclosure sale.  Id.

To the extent Thompson alleges that Fay failed to offer short-term options under § 1024.41(c)(2)(iii), the record does not support that claim.  Fay did provide a forbearance plan based on Thompson's first incomplete application.  Although Thompson apparently wanted a longer period of forbearance, Thompson has not shown Fay was required to offer a longer period.  In fact, § 1024.41(c)(2)(iii) is discretionary - a servicer "may offer a short-term payment forbearance program."

23

Therefore, the regulation did not require Fay to offer any forbearance program or a program for a specific period of time.

Thompson has not shown a factual dispute that would preclude summary judgment on her claims under § 1024.41.

B.   Continuity of Contact – Section 1024.40

Section 1024.40 requires servicers to have policies and procedures to communicate with and address the options for delinquent borrowers.  That part of Regulation X, however, is administrative and does not create a private right of action. Lau v. Specialized Loan Servicing, LLC, 2023 6135553, at *11 (S.D.N.Y. Sept. 20, 2023); Moody v. PennyMac Loan Servs., LLC, 2018 WL 10812614, at *10 (D.N.H. Mar. 27, 2018).  Therefore, Thompson does not state an actionable claim under § 1024.40.

C. Qualified Written Requests – §§ 1024.36 and 1024.35

RESPA requires mortgage servicers to provide a written response within five days to qualified written requests from borrowers "for information relating to the servicing" of a loan. 12 U.S.C. § 2605(e)(1)(A).  A qualified written request is "written correspondence . . . that . . . enables the servicer to identify[] the name and account of the borrower . . . [and] includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error

or provides sufficient detail to the servicer regarding other information sought by the borrower." § 2605(e)(1)(B). Sections 1024.35 and 1024.36 are the implementing regulations under Regulation X for § 2605(e)(1). Ortiz v. NewRez LLC, Case No. 23-11222, --- F. Supp. 3d ---, 2024 WL 1521585, at *1 (D. Mass. Apr. 9, 2024).

In support of its motion for summary judgment, Citigroup acknowledges that Thompson cited §§ 1024.35 and 1024.36 in her amended complaint as grounds for her claims. Citigroup asserts, however, that Thompson did not send a qualified written request to Fay that would trigger the requirements of those regulations. For that reason, Citigroup contends, it had no obligation to respond. Thompson did not address a claim under §§ 1024.35 or 1024.36 in her own motion for summary judgment, and she did not file a response to Citigroup's motion. As such, Thompson appears to have forfeited any claim under §§ 1024.35 and 1024.36. See United States v. Orlandella, 96 F.4th 71, 96 n.36 (1st Cir. 2024); Coons v. Industrial Knife Co., 620 F.3d 38, 44 (1st Cir. 2010).

Thompson provides no grounds to find that she can prove facts to support claims under §§ 1024.35 and 1024.36. Therefore, Citigroup is entitled to summary judgment on those claims to the extent they are alleged in the amended complaint.

<u>Conclusion</u>

For the foregoing reasons, the plaintiff's motion for summary judgment (doc. no. 27) is denied.  The defendant's motion for summary judgment (doc. no. 30) is granted.

Summary judgment is granted in favor of the defendant on all claims.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

May 9, 2024

cc:  Leila J. Thompson, pro se
     Lyndsey Stults, Esq.
     Kevin P. Polansky, Esq.

26